# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA ex rel.
EDUCATIONAL CAREER
DEVELOPMENT, INC.,

               **Plaintiff,**

-vs-                                 **Case No.  6:04-cv-93-Orl-19DAB**

CENTRAL FLORIDA REGIONAL
WORKFORCE DEVELOPMENT BOARD,
INC., AND WORKFORCE CENTRAL
FLORIDA, INC.,

               **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **RELATOR'S SECOND AMENDED MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS[1] (Doc. No. 20)** |
| **FILED:** | **November 30, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part
and **DENIED** in part.

       Realtor seeks reimbursement of its attorney's fees and costs pursuant to the False Claims Act.

Under the False Claims Act (FCA), a private person (the "Relator") may bring a *qui tam* civil action

---

[1]Costs are to be taxed by the Clerk upon presentation of a bill of costs (F.R.Civ.P. 54(d)(1)). To the extent Relator
seeks reimbursement of his costs, he must file a separate bill of costs; the bill is then reviewed on motion of any party.

"in the name of the [Federal] Government," 31 U.S.C. § 3730(b)(1), against "[a]ny person" who, knowingly presents to the Government a false or fraudulent claim for payment, § 3729(a), with the relator receiving a share of any proceeds from the action. *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765 (2000) (citing 31 U.S.C. §§ 3730(d)(1)-(2)).

On January 22, 2004, Relator filed suit under the FCA against Defendants Central Florida Regional Workforce Development Board, Inc. d/b/a Workforce Central Florida, Inc. ("WCF") and the Workforce Central Florida Foundation, Inc. (the "Foundation") alleging that they illegally misappropriated and diverted government funds from the Workforce Investment Act to purchase real property and other unauthorized purposes. Doc. No. 1. The United States intervened on June 9, 2006. Doc. No. 2. On August 28, 2006, the parties filed a Stipulated Dismissal pursuant to a Settlement Agreement, and the Court entered its Order approving the Settlement Agreement on August 31, 2006, but retained jurisdiction for the limited purpose of deciding Realtor's attorney's fees and costs pursuant to 31 U.S.C. §3730(d). Doc. Nos. 4 & 5.

The Relator seeks attorney's fees of $50,715 for counsel's 112.7 hours of time at $300 per hour with a 1.5 lodestar multiplier, plus reimbursement of costs of $275.00. Doc. No. 20. The Foundation objects to Relator's motion, arguing only approximately 41 to 47 hours and a reduced hourly rate is reasonable. Doc. No. 28[2]. WCF contends the motion for fees should be denied because it is a state agency, the invoices are vague, the hourly rate and some of the time entries are unreasonable and/or not compensable, and the overall fee should be limited to $10,000 based on an hourly rate of $200. Doc. No. 29. Alternatively, WCF seeks an evidentiary hearing and discovery

---

[2]For some reason (perhaps arising from Relator's succession of motions or the vagaries of dealing with the electronic filing system, Workforce Central Florida Foundation filed its opposition memorandum as four separate documents, which is particularly cumbersome for the Court to review. *See* Local Rule 3.01(c).

concerning the duration and content of meetings and phone conferences between Relator's counsel and the Assistant United States Attorney.  Doc. No. 29.

**WCF is not exempt from the FCA**

WCF argues that the False Claims Act does not apply to state agencies, units of the state and an arm of the state, citing *Vermont Agency*, 529 U.S. at 788 ("the False Claims Act does not subject a State (or a state agency) to liability.").  WCF is a non-profit regional workforce board created pursuant to the Workforce Innovation Act of 2000 designed to implement the federal Workforce Investment Act of 1998.  *See* FLA. STAT. § 445; 29 U.S.C. § 2801 *et seq*.

In support of its proposition that it *is* a state agency, WCF cites a section of the Florida Statutes which unequivocally states that it *is not* a state agency: "For purposes of procurement, regional workforce boards and their administrative entities are *not* state agencies."  FLA. STAT. § 445.007(8).  WCF argues, that compared to the statute governing Workforce Florida, Inc. – which clearly states that it is not a state agency for any reason – WCF should be viewed as a state agency for most purposes.  *See* FLA. STAT. § 445.004(1) ("There is a created not-for-profit corporation, to be known as 'Workforce Florida, Inc.' . . . and which shall not be a unit or entity of state government."). WCF contends that the absence of such strong language in this section dealing with procurement, "suggests the Legislature intended for WFI to not be a unit or entity of state government, while regional workforce boards are considered a state unit or entity except for purposes of procurement." Doc. No. 29 at 6.  WCF contends that because it is subject to the control, supervision and direction of a state agency and performs a public duty, WCF by association is also a state agency immune from the provisions of the FCA. *Id.*  However, WCF cites no case law to support its argument that it is a state entity in the face of statutory provisions which clearly state it is not a state agency, *especially*

"for purposes of procurement," which is precisely the subject at issue here. Moreover, the same provision, Florida Statute § 445.007(8), makes it abundantly clear that "regional workforce boards shall apply the procurement and expenditure procedures required by federal law for the expenditure of federal funds." FLA. STAT. § 445.007(8). The WCF is bound by the requirements of the federal False Claims Act, which precludes certain conduct in the "expenditure of federal funds."

**Determining the Appropriate Amount of Attorney's Fees**

> *A.  Standard for Award of Fees under the False Claims Act*

A successful relator is entitled to recover fees under the False Claims Act "for reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs, with all such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). The Foundation and WCF do not dispute that Relator is a "prevailing party" having received a settlement under the FCA and therefore entitled to an attorney's fee award; rather, they contest the reasonableness and credibility of the fee amounts requested.

The initial burden of proof that the fee is reasonable falls on the Relator, who must submit evidence regarding the number of hours expended and the hourly rate claimed. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988). The "starting point" for setting an attorney's fee is to determine the "lodestar" figure: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley,* 461 U.S. at 433; *Norman,* 836 F.2d at 1299.

Courts use the "lodestar" methodology to determine reasonable attorney's fees in *qui tam* actions. *United States ex rel. Burr v. Blue Cross and Blue Shield of Florida, Inc.,* 882 F. Supp. 166, 169-170 (M.D. Fla. 1995). A reasonable hourly rate is the prevailing market rate in the relevant legal

community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Norman*, 836 F.2d 1292 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).

The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *see Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148 (2d Cir. 1994) (prevailing community court should use in setting the lodestar is the district in which the court sits).

An applicant may meet this burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). The court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303; *American Charities for Reasonable Fundraising*

*Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1310 (M.D. Fla. 2003); *Scelta v. Delicatessen Support Services,* 203 F.Supp.2d 1328, 1331 (M.D. Fla. 2002).  In exercising its discretion, this Court must consider "the prevailing marketplace rates for the type of work and the experience of the attorney's fees." *Cabrera v. Jakabovitz,* 24 F.3d 372, 392 (2d Cir. 1994).

     *B. Reasonable hours and time entries in this case*

     A request for attorney's fees should not result in a second major litigation.  *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  As the Supreme Court explicitly noted in *Hensley,* "Cases may be overstaffed, and the skill and experience of attorneys vary widely." 461 U.S. at 435.  In determining hours reasonably expended, the Court must disallow excessive, redundant or otherwise non-billable time. *Id.*; *Lang v. Reedy Creek Improvement Dist.*, 1997 WL 809200, *3-4 (M.D. Fla. 1997).

     The Foundation and WCF point to numerous entries in Mr. Brodersen's affidavit that are either vague or have changed in this third iteration, accompanying this Second Amended Motion for Fees[3].  Doc. No. 20; Doc. Nos. 6 & 7 (previous Motions).  As the Defendants point out, the parties never engaged in any meaningful litigation, discovery, or motions practice.  The Complaint was filed under seal and the case settled on the Complaint, with no defendant entering an answer, no discovery, and no substantive motions filed.  The only activity in the case was the filing of motion by the United States seeking more time to decide whether to intervene.

     Defendants basically argue that Relator's counsel has not exercised billing judgment, in that the Relator seeks reimbursement for attorney activities with inadequate descriptions or too much time charged for certain descriptions.  The general subject matter of the time expenditures ought to be "set

---

[3]Relator eventually dropped his request for $200,000 in expenses, which Defendants contend should not have been included because they were no more than normal operating expenses.

out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  With respect to the reasonableness of hours expended, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 434.  Additionally, "Efficiency means doing well just what ought to be done and doing it in a minimum of time."  *Norman*, 836 F.2d at 1301.

Defendants challenge the time entries that have been modified since Relator filed his previous Motions for Attorney's Fees.  Doc. Nos. 6 & 7.  The Court has reviewed and compared the earlier filings with the current time entries in Doc. No. 20-2 and finds that with a few exceptions described below, there have been numerous deletions of time entries and insignificant modifications, such as "Mark Mason" to "client."  While the amount of time sought for particular days has remained the same, the only addition (with one notable exception[4]) to the descriptions has been to add entries for "legal research," which is generally verifiable by billings from legal research companies (which have not been provided in this case).  However, Defendants' points regarding such research are well-taken in that, if Mr. Brodersen were experienced enough in *qui tam* actions, then background legal research such as "legal research on False Claims Act" (12/15/03 entry); "legal research on Department of Labor statutes and regulations" (12/18/03 entry); "ability of Relator to participate in investigation" (Dec-02-05 entry); or "attorney's fees collectibility issues" (Aug-25-06) (in addition to just plain "legal research" (Sep-12-06)) would have been deleted in the exercise of billing discretion.  While time spent litigating a case is certainly recoverable, time spent "getting up to speed" or learning about the principles of *qui tam* actions, which does not advance the case and was not a result of Defendants'

___

[4]Relator's counsel added a time entry for Nov-15-05 for "review[ing] all documents compiled to date and review[ing] WCF website in preparation for conference with Ryan Fayhee (4.0).  The Court discounts this new entry, which was added without explanation by counsel.  Doc. No. 20-2.

actions, is not reasonably billed to a client or one's adversary.  *Lang v. Reedy Creek Improvement Dist.*, 1997 WL 809200, *3-4 (M.D. Fla. 1997) (coincidentally discounting time spent by Mr. Brodersen "getting up to speed" in a sex discrimination case).  The Court will deduct such time for counsel's efforts spent on self-education or generalized research.

Moreover, Relator is not entitled to reimbursement of fees for activities unrelated to the litigation, such as negotiations with the United States over Relator's share of the settlement or time spent researching the viability of such efforts[5].  The time Relator's counsel spent negotiating Relator's share of the settlement with the United States is not compensable from the Defendants because such negotiations do not directly involve Defendants or prosecution of the claims at issue.  *See United States ex rel. Taxpayers Against Fraud v. General Electric*, 41 F.3d 1032, 1045 (6th Cir. 1994) (defendant not liable for fees in collateral dispute over relator's share of *qui tam* settlement); *United States ex rel. Doe v. Pennsylvania Blue Shield Xact Medicare Serv.*, 54 F. Supp.2d 410, 416 (M.D. Pa. 1999) (dispute over the appropriate percentage of the proceeds to be awarded to a relator should be excluded from a fee request); *cf. Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994) ("Time expended independent of the relevant federal litigation is not compensable.").

After a thorough review of Relator's counsel's fees in light of such uncompensable time as set forth above, the Court finds that the reasonable hours spent on the litigation is 60.  *See Norman*, 836 F.2d at 1301 (district court must use its discretion to exclude excessive or unnecessary work on given tasks).

B.  *Reasonable hourly rate*

---

[5]Entries for June 7, 26, August 4, 10, 25, and September 12, 2006 fall in this category – in whole or in part – and will be reduced accordingly.

Relator seeks reimbursement of fees at an hourly rate of $300 per hour. Defendants contend that the supporting materials do not justify such a rate for counsel's services. The Court agrees.

The Court looks to the skills, experience and reputation of the attorneys in order to ascertain what comparable lawyers charge for similar services in this locality. "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *Cullens v. Georgia Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994). The relevant legal community is Orlando, where the case was litigated. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1318 (M.D. Fla. 2001) (relevant market for purposes of determining reasonable hourly rate for attorney's services is the place where the case is filed).

The fee applicant's customary billing rate for his hourly fee-paying clients "ordinarily is the best evidence of his market rate." *Lambert v. Fulton Co.,* 151 F.Supp.2d 1364, 1373 (N.D. Ga. 2000); *E.E.O.C. v. Enterprise Leasing Co., Inc.,* 2003 WL 21659097, *2 (M.D. Fla. 2003). Relator did not satisfy his burden of proof of the reasonable hourly rate in this case because he has not produced any direct evidence of Mr. Brodersen's own rates or that he has ever collected a particular rate in *qui tam* cases, much less the rates of other local attorney's with comparable experience. Although Mr. Brodersen states in his Second Amended Affidavit that he was admitted to practice in Florida in 1987 and in federal court in 1989, he does not discuss any of his experience with *qui tam* or similar complex billing fraud cases. He does not provide an affidavit from a qualified expert opining on the reasonable rate for such work.

-9-

The Court may decide a reasonable rate based on its own expertise and judgment . *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303-04 (11th Cir. 1988).  In a recent well-litigated *qui tam* case which settled in 2004 after several years of litigation, affidavits were submitted from well-regarded local counsel as expert witnesses opining that a rate of $300 per hour was reasonable for experienced and specialized *qui tam* counsel.  *See United States of America, ex rel. Albert D. Campbell v. Lockheed Martin Corporation*, Case No. 6:95-cv-549-Orl-28DAB, Doc. No. 559 (Report and Recommendation re: attorney's fees).  In the Lockheed *qui tam* attorney's fee litigation, Lockheed provided affidavits from several well-regarded Orlando attorneys in support of $300 per hour as a reasonable rate.

Lockheed submitted a declaration from Robert A. Leventhal, an Orlando attorney with more than thirty years' experience handling complex criminal and civil cases, including twelve years with the United States Attorney's Office, stating that he charged clients $300 per hour.  Doc. No. 545, Ex. 2.  Alan McKenna, local defense counsel for Lockheed, also stated by declaration that attorneys in his firm's Orlando office with experience comparable to the Lockheed relator's counsel charged $295 to $310 per hour.  *Id.* at Ex. 3 ¶ 7.  The declaration of Terry C. Young, an Orlando attorney with more than twenty-five years' experience handling complex litigation including fraud cases, stated that he charged clients $350 per hour as of 2004 and that his firm's rates were probably in the upper 10% in the Central Florida area, with only two or three firms charging higher rates.  *Id.* at Ex. 5 ¶ 5, ¶ 8.  The Court may rely on these experts opinions in determining the reasonable rate for local attorneys very experienced in *qui tam* or complex billing fraud litigation.  In this case, however, Mr. Brodersen has provided no evidence of his expertise in *qui tam* or complex fraud cases, aside from the fact that he has about eighteen years of experience practicing in federal court (which the Court is willing to

credit).        The Court finds that a rate of $250 per hour is consistent with (or slightly higher than) those rates already found to be reasonable in the Middle District of Florida for attorneys practicing less than twenty years in federal court. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1310-11 (M.D. Fla. 2003) (finding rates ranging from $280 to $325 for an attorney with more than 25 years experience and $250 for lead attorney with more than 20 years experience were reasonable and consistent with prevailing market rates in the Middle District of Florida); *cf. E.E.O.C. v. Enterprise Leasing Co., Inc.*, 2003 WL 21659097, *2 (M.D.Fla. 2003) (finding rate of $200 per hour to be reasonable rate based on the prevailing market rate for an attorney of similar experience in the greater Tampa Bay area for a single-plaintiff, single-defendant case).

### C.  Multiplier

Relator contends that he is entitled to a multiplier of the relevant market rate for his success in litigating the case because there was a "substantial risk of not prevailing" and "excellent results were obtained."  Relator has not argued any of the circumstances that would make this one of the exceptional cases warranting an increase in the lodestar amount.  As Defendants point out, the case settled based on a single-count seven page Complaint.  To the extent the Relator seeks an increase in the fee awarded for exceptional results, the enhancement should be denied.

*Summary Chart*

|  | Hours Sought | Hours Allowed | Rate Sought | Rate Awarded | Amt. Sought | Rec. Award |
|---|---|---|---|---|---|---|
| **D. Brodersen** | 112 | 60 | $300 | $250 | $50,715 | **$15,000** |

It is respectfully **RECOMMENDED** that Relator be awarded attorney's fees of **$15,000**. This award should be augmented by allowing interest at the federal judgment rate of 4.9%[6] from the time of the Order approving the settlement on August 28, 2006 (which is $505 as of the date of this Recommendation), and $2.03 per diem until paid. It is further respectfully **RECOMMENDED** that to the extent Relator's Motion seeks costs, it be denied without prejudice to Relator filing a bill of costs within 7 days of any Order adopting this Report and Recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 11, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[6]*See* http://jnet.ao.dcn/Finance_and_Budget/Post_Judgment_Interest_Rates.html.